**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| **CHAD PETTIFORD, On Behalf of HIMSELF and All Others Similarly Situated,** ) ) ) | |
| ) | **COLLECTIVE ACTION** |
| *Plaintiff,* ) | |
| **v.** ) | **CASE NO. 1:18-cv-00109-LAG** |
| ) | |
| **BIGHAM CABLE CONSTRUCTION INC.,** ) ) | **JUDGE GARDNER** |
| ) | |
| *Defendant.* ) | |

<u>**JOINT MOTION FOR SETTLEMENT APPROVAL, CERTIFICATION OF COLLECTIVE ACTION, AND NOTICE**</u>

Plaintiff, Chad Pettiford ("Plaintiff" or "Pettiford"), and Defendant, Bigham Cable Construction, Inc. ("Defendant" or "Bigham") (collectively, "the Parties"), hereby notify the Court that the Parties have reached a carefully negotiated settlement of Plaintiff's claims and jointly move the Court for an entry of Order and Judgment:

(1)     Approving the Parties' Settlement Agreement, attached hereto as Exhibit 1, which represents a reasonable comprise of a disputed matter under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), including the establishment of a Settlement Fund in the amount of Two Hundred Forty Thousand Eighty-Two and 50/100 dollars ($240,082.50), payment of a Three Thousand Five Hundred and 00/100 dollar ($3,500.00) service award to Plaintiff, payment of Eighty Thousand and 00/100 dollars ($80,000.00) in attorneys' fees and expenses to Plaintiff's Counsel, and approval of Settlement Services, Inc. ("SSI"), a Garden City Group Company, as the Settlement Administrator and Defendant's payment of its fees, expenses, and costs for settlement administration.

(2)     Certifying this Action as an FLSA Collective Action covering all individuals

1

employed by Bigham between May 28, 2015 and May 28, 2018 working as an Aerial and Underground Foreman, Groundhand, or Splicer and paid on a per piece or production rate regardless of hours worked (collectively "Production Employee") as identified in Exhibit 1 to the Settlement Agreement (collectively "Potential Plaintiffs");

(3)    Approving the proposed Notice of Court-Approved Settlement ("Notice") and Consent Form (collectively "Notice Packet"), attached hereto as Exhibit 2, facilitating notice to Potential Plaintiffs who are eligible for a recovery under the Settlement Agreement.

(4)    Retaining jurisdiction over this matter for purposes of enforcing the Settlement Agreement and keeping the case open until fifteen (15) days after the close of the Opt-In Period in order to allow the Parties to file the timely returned Consent Forms.

## I.    **INTRODUCTION**

1.    On May 29, 2018, Plaintiff filed this action against the Bigham, asserting a putative collective action for alleged violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"). [Doc. 1, Plaintiff's Collective Action Complaint].

2.    Bigham, a family-owned business, is a turnkey prime contractor completing cable, broadband, and telecommunication new-build, re-build, and upgrade projects for its customers. The Company specializes in large scale aerial cable, underground cable, and fiber optics construction projects. [*Id.* at ¶¶ 5-7; Doc. 20-1, Declaration of Timothy Shipman]. Bigham is a registered Motor Carrier regulated by the United States Department of Transportation's Federal Motor Carrier Safety Administration (U.S. DOT Number 7757255) and maintains a corporate office in Gulf Breeze, FL.  Bigham has regional offices and warehouses across the Southeastern United States. [*See* Doc. 20-1, Declaration of Timothy Shipman].

3.    Plaintiff was first hired by the Company in 2014 as an Aerial Crew Foreman

("Foreman") working out of the Company's Birmingham, Alabama warehouse. [Doc. 1, at ¶ 8; Doc. 20-1]. In July 2015, Plaintiff was placed in the Groundhand position where he worked until he resigned on January 29, 2016. [*Id.*]. On May 2, 2016, Plaintiff returned to the Company as a Foreman working out of the Company's Albany, Georgia warehouse until he again resigned on May 11, 2018. [*Id.*].

4.      On September 21, 2018, Plaintiff filed a Motion for Conditional Certification seeking certification of and notice to a class of similarly situated Production Employees. [Doc. 15, Motion for Conditional Certification]. Plaintiff asserts that Bigham improperly classified Production Employees as exempt and failed to pay overtime wages to Production Employees. Plaintiff contends that evidence in the record supports reliance on the Small Vehicle exception to the Motor Carrier Act exemption defense asserted by Defendant. Thus, Plaintiff believes that the cause of action, allegations, and contentions asserted in this matter have merit and that the evidence developed to date supports the claims asserted.

5.      Defendant denies Plaintiff's allegations, opposed Plaintiff's attempt to certify this action as a collective action, asserts that it had reasonable grounds to believe it complied with the FLSA, including, *inter alia*, properly classifying Production Employees as exempt under the Motor Carrier Act exemption to the FLSA, that it acted in good faith, and that it did not willfully violate the FLSA. [*See* Doc. 10, Answer; Doc. 20, Response in Opposition to Motion for Conditional Certification].

6.      Plaintiff and Defendant engaged in extensive discovery including Plaintiff requesting and Defendant responding to and producing documents related to Plaintiff and Potential Plaintiffs' job duties, including driving of vehicles with a Gross Vehicle Weight Rating over 10,000 lbs., schedules, hours, pay, policies, procedures, time records, and Defendant's efforts to

comply with the Federal Motor Carrier Safety Administration's regulations. Plaintiff took the deposition of Defendant's corporate representative on February 12, 2019. Further, Plaintiff noticed the depositions of members of management and of Defendant's former counsel, upon whose advice Defendant intended to rely in support of its good faith defense to Plaintiff's claim for liquidated damages. Defendant likewise sought the depositions of Plaintiff Chad Pettiford as well as the Opt-In Plaintiffs who have asserted claims in this action to date. These depositions were to be taken in at least three locations across Georgia and Florida. In short, significant discovery has already occurred and the Parties were on track to complete significantly more discovery in the period following the deposition of Defendant's corporate representative.

7.    Following this discovery, and in an effort to avoid incurring significantly more fees and expenses, Plaintiff and Defendant agreed to attend mediate this matter as a means to attempt an arms-length negotiation to resolve these claims. At the request of the Parties, the Court stayed the case and ordered the Parties to attend mediation on April 17, 2019 with A. Lee Parks, Esq., an experienced and highly regarded mediator who has considerable experience litigating and mediating wage and hour collective actions.[1]

8.    After extensive written and verbal settlement discussions prior to mediation, as well as negotiations during the one-day mediation session with Mr. Parks, the Parties reached a resolution in principle of Plaintiff's claims for unpaid back wages, liquidated damages, attorneys' fees, and expenses, as well as Plaintiff's claim for collective relief. Following mediation, the Parties continued arms-length negotiations regarding the specific contents of a written Settlement Agreement. The Settlement Agreement drafted and executed by the Parties is attached hereto as

---

[1] *See* https://www.henningmediation.com/bio-parks.php; https://pcwlawfirm.com/attorneys/a-lee-parks.

Exhibit 1. The Settlement Agreement is the result of arms-length negotiations informed by significant discovery regarding hotly contested claims under the FLSA and, as explained in greater detail below, represents a fair and reasonable compromise of those claims.

9.      For the foregoing reasons, the Parties respectfully request that the Court accept and approve the Settlement Agreement as a fair and reasonable compromise of disputed issues under the FLSA.

## II.      SETTLEMENT AGREEMENT

### A.      Distribution of the Settlement Fund and Additional Amounts

The Settlement Agreement's monetary terms are straightforward and call for the following payments:

1. Up to $240,082.50 (comprising the "Settlement Fund") will be paid to Plaintiff and Potential Plaintiffs. *Settlement Agreement*, at § IV(A)(1).

2. A service award of $3,500.00 will be paid directly by Bigham to Plaintiff in recognition of his contributions to the investigation and settlement of this matter. *Id.* at § IV(A)(2). This amount will not come from the Settlement Fund. *Id.*

3. $80,000 will be paid directly by Bigham to Plaintiff's counsel as a separately-negotiated payment of attorney's fees and expenses. *Id.* at § IV(A)(3). This amount will not come from the Settlement Fund and, as explained below represents a significant reduction of Plaintiff's counsel's lodestar to date. *Id.*

4. Bigham will pay the third-party settlement administrator, SSI, a Garden City Group company, to administer the notice and settlement plan. *Id.* at § IV(A)(4). This amount will not come from the Settlement Fund. *Id.*

### B.      Notice of Settlement to Potential Plaintiffs

Should the Court approve the Settlement Agreement, SSI—an administrator experienced in wage and hour settlements—will send by first-class mail and email (if known by Bigham) to each Potential Plaintiff a Notice Packet (attached hereto as Exhibit 2), including the proposed Notice and Consent Form, which describes the lawsuit and settlement, informs the Potential Plaintiffs of their expected gross settlement amount (before withholdings from the wage portion),

and explains what the Potential Plaintiffs must do in order to receive a their payment. *Settlement Agreement*, at § III.

The Settlement Notice is written in plain and understandable language, and the Settlement Administrator must follow specific protocols to ensure that all Notices and Consent Forms are mailed to the proper addresses, as well as perform re-mailing and skip traces for those whose Settlement Notices are returned as undeliverable. *Id.* at § III.

**C.    Participation in the Settlement by Potential Plaintiffs**

To receive their allotted payment, Potential Plaintiffs must return their Consent Form within sixty (60) days after being mailed by the Administrator (the "Opt-In Period). *Id.* at § III. A Consent Form is timely if it is postmarked, e-mailed, or faxed to the Administrator within the Opt-In Period. *Id.*

**D.    Settlement Fund and Allocation of Payments to Plaintiff and Potential Plaintiffs**

Potential Plaintiffs who submit a Claim and Consent Form (referred to as "Opt-In Plaintiffs") are entitled to receive their pro-rata share of the Settlement Fund. Plaintiff and the three current Opt-In Plaintiffs will not be required to submit a Consent Form during the Opt-In Period in order to receive their payment. The payment amounts are the result of a common formula applied to all 209 Potential Plaintiffs in the same manner based on their actual employment data.

The parties negotiated the amount of the Settlement Fund based on data regarding the actual number of workweeks in which Potential Plaintiffs were compensated for their work on a piece rate or production basis during the period from May 28, 2015 through May 29, 2018. The parties negotiated the following variables: (1) a percentage of total production-paid workweeks; (2) an amount of overtime hours worked each workweek; and (3) an overtime hourly rate. The parties negotiations resulted in the following assumptions: (1) in thirty percent (30%) of

production-paid workweeks Potential Plaintiffs would be eligible for an overtime recovery; (2) 4.5 overtime hours worked by each Potential Plaintiff in each workweek; and (3) an overtime hourly rate of $14.50.

Each of these assumptions were the result of arms-length negotiation based on the facts and the law. Specifically, the percentage of workweeks represents a compromise of the Parties' positions regarding the Motor Carrier Act exemption and the Small Vehicle exception to it. Namely, Defendant contends that the Motor Carrier Act exemption bars a recovery in every workweek, while Plaintiffs contend that under the Small Vehicle exception a large number of workweeks will fall outside of the Motor Carrier Act exemption. This percentage was informed by the Parties' investigation of the facts and the extensive discovery to date and represents a reasonable compromise regarding the percentage of workweeks in which the Small Vehicle exception applied.

Similarly, the number of overtime hours and the overtime hourly rate were negotiated based on the extensive discovery to date, including an analysis of pay and time records produced by Defendant. These amounts are consistent with the discovery regarding the typical number of hours worked each workweek by Potential Plaintiffs and the typical overtime rate that would be appropriate for the Potential Plaintiffs based on the fluctuating workweek method for calculating the overtime rate.

The aggregate settlement amount was determined by applying these assumptions to the total number of production-paid workweeks worked by the Potential Plaintiffs during the class period, yielding an amount of $243,582.50. The total Settlement Fund of $240,082.50 is this amount, less the agreed upon $3,500 service payment to be paid to Plaintiff in recognition of his efforts that helped secure this recovery. The $240,082.50 Settlement Fund was then allocated to

each Potential Plaintiff based on their share of thirty percent (30%) of the total number of production-paid workweeks during the class period, adjusting the amount only to ensure that no Potential Plaintiff received a share amounting to one workweek where rounding would otherwise have awarded them no payment.

In doing so, the Parties have ensured that payments to the Potential Plaintiffs are specific to their individual employment circumstances and that no one Potential Plaintiff will receive a windfall or loss.  Each Potential Plaintiff's share of the Settlement Fund is specifically delineated in Exhibit A to the Settlement Agreement and, based on the Parties' calculations, the average gross settlement amount allocated to each Potential Plaintiff (exclusive of the service award to Plaintiff, Settlement Administrator costs, and attorneys' fees and expenses), will be $1,148.72.

This represents an excellent recovery for the Potential Plaintiffs given the facts uncovered during the extensive discovery conducted in this action and the state of the law regarding the Motor Carrier Act exemption and the Small Vehicle exception to it. Moreover, the amount of the Settlement Fund was negotiated prior to and entirely separately from the amount to be paid for attorneys' fees and expenses. In short, these amount of the Settlement Fund and the specific allocation to each Potential Plaintiff who chooses to opt into this action represents a fair and reasonable compromise of several contested issues under the FLSA going to procedural issues such as conditional certification and notice, as well as both liability and damages

**E.    Release of Claims by Opt-In Plaintiffs**

All Opt-In Plaintiffs will be bound by a limited release of claims that arise out of or relate to their compensation while they were employed as Production Employees during the period of May 28, 2015 through May 29, 2018.  *Settlement Agreement*, at § VIII.  Any Potential Plaintiff who does not return a Consent Form will not be bound by the release or eligible to receive their

allocated share of the Settlement Fund.  *Id*.

**F.**    **Settlement Administrator**

The Parties have agreed to use SSI, a third-party claims administrator, to serve as the Settlement Administrator and to discharge, under counsel's direction and oversight, the notice and settlement procedures prescribed by the Settlement Agreement.  *Id.* at §§ III, IV(A)(4).  Courts routinely approve SSI as an administrator, and SSI's fees, costs, and expenses will be paid directly by Bigham and will not come from the Settlement Fund. *Id*.

**G**.    **Service Award to Plaintiff**

The Settlement Agreement provides that, subject to Court approval and in consideration for executing a general release, Plaintiff will receive a $3,500.00 service award in recognition of the valuable contributions he made to this case. *Settlement Agreement*, at § IV(A)(2). In particular, Plaintiff's efforts and contributions from the pre-suit investigation of his potential claims to the present include: (1) assisting his counsel in the investigation of the claims in this case; (2) assisting his counsel in the briefing of Plaintiff's request for conditional certification and notice and providing a supporting declaration; (3) communicating regularly with his counsel at every stage of the case, including during discovery, regarding the facts of the case and the evidence in support of his claims and the claims of similarly situated employees; (4) assisting his counsel in preparing for mediation; (5) taking off work and traveling several hours from his home in Albany, Georgia to Atlanta, Georgia to participate in the mediation of this matter with Mr. Parks; and (6) most importantly, in helping secure a Settlement Agreement that provides more than 200 production-paid current and former employees of Defendant to join this action in order to recover unpaid wages with no delay in their recovery beyond the time necessary to administer the settlement. *See* Declaration of Joshua A. Frank ("Frank Decl.") ¶¶ 8-9. In short, Plaintiff's contributions to this

case were substantial and were made at significant risk to his reputation and future employment. This service award is not a part of the Settlement Fund and will be paid separately by Bigham. *Settlement Agreement*, at § IV(A)(2).

**H.     Attorney's Fees and Expenses**

Subject to Court approval, the Parties have separately negotiated (upon agreeing to settle the underlying claims) the payment by Bigham of $80,000 to resolve Plaintiff's claim for attorneys' fees and costs. *Settlement Agreement*, at § IV(A)(3). This amount does not come from the Settlement Fund and will be paid directly by Bigham. *Id.*

### III.     LEGAL ARGUMENT AND CITATION TO AUTHORITY

**A.     The Court Should Approve the Collective Action Settlement**

Under prevailing Eleventh Circuit case law, the Parties to an FLSA action can resolve the dispute and enter into a valid waiver of the employee's FLSA claims in either of two ways. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, an employee may settle and waive claims under the FLSA if the Parties present a proposed settlement to a court which may enter a stipulated judgment after approving the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353.

In discussing the approval of FLSA settlements, the Eleventh Circuit has noted that, in the context of an FLSA claim for back wages by employees, the employees are likely to be represented by an attorney who can protect their rights under the statute. Thus:

> [W]hen the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over

> issues, such as FLSA coverage or computation of back wages that are actually
> in dispute, we allow the [] court to approve the settlement in order to promote
> the policy of encouraging settlement of litigation.

*Id.,* at 1354.

In addition, the Court should be mindful of the strong presumption in favor of finding a settlement is fair.  *Id.*, at 1354; *see also*, *Ford v. Property Preservation Experts, Inc*., 2012 U.S. Dist. Lexis 107194 at *3 (M.D. Fla. July 31, 2012) (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)); *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 649 (6th Cir. 2009) ("The law strongly favors settlements. Courts should hospitably receive them."); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy").  The advantages of settlements are particularly apparent in the compromise of class or collective actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources," *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993), and "where one proceeding can resolve many thousands … of claims that might otherwise threaten to swamp the judiciary."  McLaughlin on Class Action § 6:3; *see also Vassalle v. Midland Funding, LLC*, No. 11-cv-00089, 2014 U.S. Dist. LEXIS 146543, *17 (N.D. Ohio Oct. 14, 2014) ("It is axiomatic that the settlement of class action litigation is favored.).

An FLSA settlement may also be approved as fair even where the plaintiff receives in settlement less than the amount they may have otherwise been entitled to under the law, particularly given the risks associated with litigation.  *Rutland v. Visiting Nurse Assoc. of Central Fla., Inc*., 2008 U.S. Dist. Lexis 61776 (M.D. Fla. July 29, 2008) (approving FLSA settlement where named plaintiff settled for approximately 6% of the wages she originally claimed).  In addition, the dispute over liquidated damages and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement then originally claimed.  See *Ford*, 2012 U.S. Dist. LEXIS 107194, at *3 (approving FLSA settlement where one opt-in plaintiff

settled for less than 3% of his original claimed back wages).

Unlike the procedure under Rule 23, collective action members must affirmatively opt-in to the litigation in order to join in.  Because, under the FLSA, "the parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits later," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions and a one-step approval process is standard for FLSA Settlement.  *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated on other grounds by H*offman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Hall v. ProSource Technologies, LLC.*, No. 14 Civ. 2502, 2016 U.S. Dist. 53791, at *28 (E.D.N.Y. Apr. 11, 2016) ("FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.").  There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it.  *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) ("The difference between a Rule 23 class action and a section 16(b) class action is … that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

In approving an FLSA settlement, the Court must ensure that there is: (1) a "bona fide dispute" between the parties as to the employer's liability under the FLSA; and (2) the agreement is "fair, reasonable, and adequate ..."  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19; *accord In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, Case No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 at *2 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores*, 679 F.2d at 1353-55); *see also* Fed. R. Civ. P. 23(e).  Courts view the adversarial nature of an FLSA case to be an indicator of the fairness of the settlement.  *Lynn's Food Stores*, 679 F.2d at 1353-54.  In light of these standards, approval of this settlement is eminently appropriate.

**B.**     **The Settlement Resolves a Bona Fide Dispute Between the Parties**

The existence of such a *bona fide* dispute "serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby*, 2015 U.S. Dist. LEXIS 30034, at *6; *see also Swigart v. Fifth Third Bank*, Case No. 11-cv-88, 2014 U.S. Dist. LEXIS 21690, at *3-4 (S.D. Ohio Feb. 19, 2014) (approving FLSA settlement where it reflected a reasonable compromise over contested issues, including whether Defendant properly classified the plaintiff as exempt and the defendant's good faith defense.). This case involves numerous bona fide disputes regarding both liability and damages, primarily concerning the exempt or non-exempt status of Defendant's Production Employees, which includes all Underground and Aerial Foreman, Groundhands, and Splicers, employed by Bigham between May 28, 2015 and May 28, 2018.

The existence of bona fide contested issues is clear from the parties positions: Bigham maintains that its classification of Production Employees as exempt from overtime requirements was proper and that, in addition to having not violated the FLSA, if it had violated the law, it had not done so willfully (as alleged by Plaintiff) and that its actions were taken in good faith with reasonable grounds for believing that it acted in accordance with the FLSA. Plaintiff on the other hand contends that these same employees were improperly classified as exempt, that even if the Motor Carrier Act exemption applies, the Small Vehicle exception applies in many workweeks, and that Bigham knew or should have known that it misclassified these workers. In short, the parties dispute, at a minimum: (1) liability (based on Defendant's contested assertion of the Motor Carrier Act exemption and Plaintiff's assertion of the Small Vehicle exception); (2) the appropriate statute of limitations should apply (based on Plaintiff's contested assertion of willfulness); and (3) the availability of liquidated damages (based on Defendant's asserted good faith defense).

Moreover, there are multiple disputed questions of fact that are relevant to the resolution of the disputed issues above. These include facts regarding the work performed by Production Employees, the vehicles they drove, their worksites and their job duties, the amount of time worked each workweek. There are also disputes regarding the legal implications to be drawn from those facts, including the proper standards for willfulness and good faith and how damages are determined.

As a result of the extensive data, information, and documents produced during the course of discovery, information from their clients, and the course of the settlement discussions, the Parties had a fulsome understanding of these issues and the risks presented by them had they continued to litigate this matter through dispositive motions and trial. These are the *bona fide* disputes at the core of this litigation, that have been the focus of substantive discovery to date, and that informed the Parties and their counsel as they negotiated the Settlement Agreement at issue.

## C.    The Settlement Is Fair and Reasonable

The Court should approve the settlement because it is fair and reasonable and was reached only after extensive communications and negotiations at mediation between experienced counsel well-versed in wage and hour litigation. Arm's-length negotiations conducted by competent counsel constitutes *prima facie* evidence of a fair settlement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001).

The settlement encompasses and contemplates a recovery for unpaid overtime worked by the Potential Plaintiffs within the maximum, three-year statute of limitations applicable under the FLSA. In contrast, as a general rule, the statute of limitations for a claim seeking unpaid overtime wages under the FLSA is generally two years absent a showing of willfulness by the plaintiff. 29 U.S.C. § 255(a); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th

Cir. 2008) (citing *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988). The compromise as to the percentage of workweeks, number of hours worked each week, and applicable overtime rate resulting in the settlement are all reasonable. There is evidence in the factual record on which the Parties could dispute the application of the Motor Carrier Act exemption in some or all weeks, making it reasonable to base the Potential Plaintiffs' recoveries on a percentage of workweeks. Likewise, the number of overtime hours of 4.5 hours per week represents fair and reasonable compromise, as it is rooted in the Parties' understanding of what the actual time records produced in the case.

Finally, an overtime rate of $14.50 per hour represents a reasonable compromise regarding the appropriate overtime rate of pay based on the compensation records produced in the case. Foreman, Groundhands, and Splicer employees were compensated on a piece-rate basis. When an employee is paid based, in whole or in part, on their production rate or on a per piece rate, "the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources," including "any sums paid for waiting time or other hours worked." 29 C.F.R. § 778.111(a); *see also Sanders v. M&M Waste, Inc.,* No. 1:08-CV-3856-CC, 2010 U.S. Dist. LEXIS 152230, at *14 (N.D. Ga. Sep. 27, 2010) (discussing overtime when an employee received some or all of their pay on a piece rate basis as defined in 29 U.S.C. 207(g)). As the regulations explain, "this sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's 'regular rate' for that week." 29 C.F.R. § 778.111(a). For "overtime work the pieceworker is entitled to the. . . sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week." *Id.* Therefore, Production Employees would only be entitled to recover the one-half portion of the overtime premium. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 393 (6th Cir. 2017) (holding

that only additional halftime pay is required in such cases where the employee has already received straight-time compensation at piece rates). Thus, the half-time rate of $14.50 would assume that Potential Plaintiffs typically had a regular rate of $29.00 per hour.

In light of this, Plaintiff believes that this amount represents a fair settlement given the amount of unpaid overtime that was claimed, the uncertainty of success on collective action certification, and Bigham's defenses on the merits, including its contention that Production Employees were properly classified as exempt.

Each of the Potential Plaintiffs, other than Plaintiff who has signed the Settlement Agreement, will receive notice of the terms of the settlement, and will be able to choose whether or not to knowingly accept the consideration provided for in the Settlement Agreement in return for their release of wage and hour related claims. These factors, alone, militate in favor of approving the settlement. Other factors also overwhelmingly favor approval.

First, the settlement mitigates serious litigation risks that would be faced by both sides and represents a good value in light of those risks, including with respect to issues of conditional certification and final certification/decertification of the collective action. The litigation of these issues is unpredictable, especially given the complicated factual questions that must be resolved to determine whether the Potential Plaintiffs were misclassified or not.

Here, the parties have reached an agreement that resolves the procedural issue of whether conditional certification is appropriate by offering the Potential Plaintiffs the opportunity to opt into the settlement. Moreover, the average value of the Potential Plaintiffs' gross recovery is $1,148.72 gross per Potential Plaintiff. These amounts are tied to the number of workweeks actually worked by each Potential Plaintiff during the class period while paid on a piece rate basis and take into account the real risk that Defendant could prevail on its Motor Carrier Act exemption

with respect to all workweeks resulting in no recovery. S*ee Williams v. Omainsky*, No. 15-0123, 2017 U.S. Dist. LEXIS 11429, *11-12 (S.D. Ala. Jan. 27, 2017) (approving FLSA settlement where plaintiffs and opt-ins received compensation for 85% of their recorded work hours and noting that "plaintiffs accepted less money in settlement than they would have received had they prevailed on all matters at trial, in exchange for certainty of receiving payment now without the burden of litigating issues that might have reduced or even negated plaintiffs' recovery.").

Second, the settlement will enable the Parties to avoid significant burdens and expenses. If the settlement were to be approved, the Parties will not have to devote time and resources to discovery (including taking and defending numerous additional depositions), to a potentially lengthy trial, to post-trial briefing, and to appellate proceedings. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *21-22 (approving settlement where, among other things, the parties would be likely to undertake great expense in pursuing discovery).

Third, Plaintiff's counsel drew on their substantial experience in analogous wage and hour cases in order to provide Plaintiff and the Potential Plaintiffs with a high degree of expertise in this field.  In turn, Freeman Mathis & Gary, LLP, which represents Bigham, is one of the leading management-side labor law firms in the country.  The settlement was reached only after the Parties vigorously attempted to secure the most desirable outcome for their respective clients. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *23-24.  Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried.").  Here, allocations to Plaintiff and the Potential Plaintiffs were derived from damages which were calculated with the same formula applied to the Potential

Plaintiffs in the same way, using each eligible employee's actual weeks worked paid on a piece rate basis.

Fourth, there was substantial investigation of the claims and an exchange of information in discovery, as well as before, during, and after mediation to allow counsel to make well-informed decisions in negotiating and agreeing to this settlement.  As indicated, Bigham provided Plaintiff with detailed employment and payroll data for Plaintiff and Potential Plaintiffs, which allowed counsel to make reasonable calculations of the potential damages in the case.  Bigham also provided job descriptions and other materials which allowed Plaintiff to evaluate Bigham's classification decision and weigh the merits of its defenses, which Plaintiff's counsel considered in concluding that settlement on the terms negotiated is in the best interest of Plaintiff and the Potential Plaintiffs.  *See Williams*, 2017 U.S. Dist. LEXIS 11429, at *13 (approving FLSA settlement where it was the product of "arm's-length, good faith negotiations conducted after exchange of discovery materials that allowed each side to develop an informed factual basis for same.").

Finally, it is in the public interest to approve the settlement.  As noted, the history of this case reflects hotly contested disputes regarding conditional certification and the merits, significant discovery, and arm's length settlement negotiations informed by the information uncovered during discovery and experienced counsel's understanding of the applicable law. The Settlement Agreement resolves the Parties' bona fide disputes and avoids potentially long and protracted litigation, is equitable in its treatment of different classes of individuals—with all individuals receiving comparable damages using the same formula, *Williams*, 2017 U.S. Dist. LEXIS 11429, at *14—and achieves the remedial purpose of the FLSA of compensating employees for unpaid wages. Given these factors, the Settlement Agreement represents a fair and reasonable compromise

of the claims at issue.

**D.      The Proposed Settlement Notice is Proper**

The Court should approve the proposed Settlement Notice.  *See Settlement Notice*, attached hereto as Exhibit 2. The Settlement Notice sufficiently informs eligible Potential Plaintiffs of the gross amount of their allocated recovery, the steps they must follow to participate, the consequences of non-participation, the monetary amount to which they are entitled under the Settlement Agreement, the scope and mechanism of the release of claims, the request for attorney's fees and expenses, and other terms of the Settlement Agreement.  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  The Settlement Notice provides timely and accurate notice of the collective action so that each Potential Plaintiff has the opportunity to make an informed decision regarding whether to opt into the settlement.

**E.      The Service Award Should Be Approved as Fair and Reasonable**

The settlement provides for payment to Plaintiff of a $3,500.00 service award. *Settlement Agreement*, at § IV(A)(2).  The service award recognizes the time and effort that Plaintiff expended in furtherance of the investigation, litigation, and settlement of this matter, including informing Plaintiff's counsel of the facts initially, remaining in regular communication with his attorneys throughout the case regarding matters important to the litigation, providing information and documents, providing valuable information about Bigham's operations, reviewing documents, conferring about the settlement, preparing for and participating in mediation, providing a declaration in support of conditional certification, and assisting with the damages analyses. *See* Frank Decl. ¶¶ 8-9.

Courts in the Eleventh Circuit routinely grant service awards to plaintiffs for their diligence and fortitude and recognize that plaintiffs who had extensive involvement in the prosecution and

settlement of the dispute deserve compensation above and beyond amounts to which they are otherwise entitled. *In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 358 (N.D. Ga. 1993) ("The Court finds that incentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class. Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts.") (citation and internal quotation marks omitted); s*ee also Crankshaw v. NCL Corp.*, No. 16-cv-20415, 2018 U.S. Dist. LEXIS 42788 *11 (S.D. Fla. Mar. 18, 2018) (noting that service awards recognize the dedication these individuals make, including assisting with the case investigation and discovery, and consulting with counsel to determine a fair settlement and for other contributions made for the benefit of the settling collective action members); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $303,000 payment to each class representative plaintiff in employment case where potential class members on average received $38,000).

Service awards are common in collective action settlements and the proposed service award is well within the range of awards that courts within this Circuit regularly and routinely grant. *See Crankshaw*, 2018 U.S. Dist. LEXIS 42788, at *11-12 (granting service awards in the amounts of $9,250, $3,250 and $2,500 to the named plaintiffs); *North Star Capital Acquisitions, LLC v. Krig*, 3:07-cv-264-J-32MCR, 3:07-cv-265-J-32MCR, 3:07-cv-266-J-32MCR, 3:08-cv-1016-J-32MCR, 2011 U.S. Dist. LEXIS 4596 (M.D. Fla. 2011) (awarding $5,000 in incentive awards to the named class representatives); *Holman v. Student Loan Xpress, Inc., 778 F. Supp. 2d 1306*, 1315, 1319 ($5,000 in service awards approved); *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 U.S. Dist. LEXIS 67832 (S.D. Fla. 2010) (approving $10,000 incentive award for lead plaintiff); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007)

(approving $7,500 in service awards to three representative plaintiffs).

**F.    Attorneys' Fees and Expenses Should Be Approved as Fair and Reasonable**

The FLSA's fee-shifting language provides that a prevailing plaintiff shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b). "Indeed, an 'award of attorneys' fees under the FLSA is mandatory . . . .'" *Thompson v. United Stone, LLC*, No. 1:14-cv-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (citations omitted). "[T]he purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984)).

When considering whether to approve an FLSA settlement, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). The starting point in calculating a "reasonable" attorney fee is typically the determination of the fee applicant's "lodestar," which is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Cain v. Almeco USA, Inc.*, No. 1:12-cv-3296-TWT, 2014 WL 2158413, at *1 (N.D. Ga. May 23, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). As the Supreme Court has held, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987) ("A strong presumption that the lodestar figure—the product of reasonable hours times a

reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ."); *Cain*, 2014 WL 2158413, at *1 (same).

Here, several factors support the award of fees. As noted above, the Parties separately negotiated a payment of $80,000 to resolve Plaintiff's claim for attorneys' fees and costs. Frank Decl. ¶ 14. In other words, only after negotiating the amount Plaintiff and Potential Plaintiffs who join this action will recover did the Parties negotiate a payment to resolve Plaintiff's claim for attorneys' fees and costs. *Id.*

This $80,000 payment represents a substantial reduction of Plaintiff's counsel's lodestar to date. *Id.* Plaintiff's attorneys at Barrett Johnston Martin & Garrison, LLC and Pope McGlamry, Kilpatrick, Morrison & Norwood, P.C. have incurred a total of $111,311.50 in attorneys' fees and $6,196.19 in costs. *Id.* ¶ 11. After reimbursing expenses, the remaining $73,803.81 represents nearly a thirty-four percent (34%) reduction in Plaintiff's counsel's lodestar. *Id.* ¶ 14. This reduction confirms that the agreed upon payment of fees and expenses does "not produce [a] windfall[]" to Plaintiff's counsel and confirms its reasonableness. *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citations omitted). In short, there is "a strong presumption" that the lodestar represents a reasonable fee, *Perdue*, 559 U.S. at 554, and an even stronger presumption exists where, as here, the agreed upon fee is below the lodestar amount.

Furthermore, Plaintiff's counsel and support staff have expended 344.1 billable hours on this matter. *Id.* ¶ 11. After reimbursing out-of-pocket litigation expenses, the recovery of $73,803.81 results in an average hourly rate for this time of $214.48. ¶ 14. This average hourly rate is reasonable, particularly in light of the complexity of the factual and legal issues and the excellent result achieved.

Finally, this payment to resolve Plaintiff's claims for fees and expenses is reasonable light

of Plaintiff's counsel's extensive experience handling complex class and collective wage-and-hour litigation, including in this District. *See, e.g.*, *In re Tyson Foods, Inc. Fair Labor Standards Act Litigation*, No. 4:07-MD-1854, 694 F. Supp. 2d 1358 (M.D. Ga. 2010) (Land, J.) (Barrett Johnston Martin & Garrison, LLC served as co-counsel in two of eight "test cases" litigated before MDL court); *Bowden v. GHHS Healthcare, LLC*, No. 7:17-cv-00143 (M.D. Ga.) (Lawson, J.); *see also* Frank Decl. ¶¶ 2-3.

In short, the agreed upon payment of $80,000 to resolve Plaintiff's claims for attorneys' fees and expenses is reasonable.

## IV.    <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests that the Court enter an Order: (1) Approving the Parties' Settlement Agreement, attached hereto as Exhibit 1; (2) Certifying this Action as an FLSA Collective Action covering the Potential Plaintiffs as identified in Exhibit 1 to the Settlement Agreement; (3) Approving the Notice Packet, attached hereto as Exhibit 2, facilitating notice to Potential Plaintiffs; and (4) retaining jurisdiction over this matter for purposes of enforcing the Settlement Agreement and keeping the case open until fifteen (15) days after the close of the Opt-In Period in order to allow the Parties to file the timely returned Consent Forms.

Respectfully submitted this 17th day of May 2019.

*CONSENTED TO BY:*

| | |
|---|---|
| /s/ Brenton S. Bean | /s/ Joshua A. Frank |
| Brenton S. Bean | David W. Garrison (TN Bar No. 24968) * |
| Georgia Bar No. 044351 | Joshua A. Frank (TN Bar No. 33294) * |
| William E. Collins, Jr | BARRETT JOHNSTON MARTIN & GARRISON, |
| Georgia Bar No. 582180 | LLC |
| FREEMAN MATHIS & GARY, LLP | Phillips Plaza |
| 100 Galleria Parkway, Suite 1600 | 414 Union Street, Suite 900 |
| Atlanta, GA  30339 | Nashville, TN 37219 |
| T: (770) 818-0000 | Telephone: (615) 244-2202 |
| F: (770) 937-9960 | Facsimile: (615) 252-3798 |

E: bbean@fmglaw.com
E: wcollins@fmglaw.com

*Attorneys for Defendant*

dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

Michael J. Moore (GA Bar No. 520109)
Aimee J. Hall (GA Bar No. 318048)
POPE MCGLAMRY, KILPATRICK, MORRISON &
NORWOOD, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326
Telephone: (404) 523-7706
michaelmoore@pmkm.com
aimeehall@pmkm.com
efile@pmkm.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing *Joint Motion for Settlement Approval, Certification of Collective Action, and Notice* was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon the parties as indicated below through the Court's ECF system on May 17, 2019:

**Brenton S. Bean**
**William E. Collins, Jr.**
Freeman, Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339
770-818-0000
Fax: 770-937-9960
bbean@fmglaw.com
wcollins@fmglaw.com

*Attorneys for Defendant*

/s/ Joshua A. Frank
JOSHUA A. FRANK
**BARRETT JOHNSTON**
**MARTIN & GARRISON, LLC**
